

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VICTORIA M. STAFFELDT )<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>JO ANNE B. BARNHART, )<br>COMMISSIONER OF SOCIAL SECURITY )<br>)<br>Defendant. ) | No. 03 C 2207<br><br>Magistrate Judge Schenkier |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff, Victoria Staffeldt, seeks judicial review of a final decision denying her application for benefits, under 42 U.S.C. § 405(g) of the Social Security Act (the "Act"). On November 15, 2000, Ms. Staffeldt applied for disability insurance benefits ("DIB") and supplemental security income ("SSI"), asserting a disability onset date of October 15, 2000 stemming from rheumatoid arthritis and bipolar/manic depression (R. 24, 109). Her claims were initially denied March 6, 2001, and denied again after reconsideration on July 26, 2001 (R. 14). Ms. Staffeldt filed a timely request for hearing on September 4, 2001 (R. 14). An administrative hearing was held before an Administrative Law Judge (the "ALJ") on June 5, 2002, during which Ms. Staffeldt and a medical expert ("ME") testified regarding her alleged illnesses (R. 28-74). Ms. Staffeldt's claim was denied by written decision of the ALJ on September 20, 2002 (R. 11-22). Ms. Staffeldt then brought a request for review before the Social Security Administration Appeals Council dated November 4, 2002, which included a letter submitted by her physician (R. 10). The council denied the request for

---

[1]On October 8, 2004, by consent of all the parties, the Executive Committee reassigned this case to this Court to conduct all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c) (doc. ## 7-9).

review on February 5, 2003 (R. 6-8). The ALJ's decision therefore became the final decision of the Commissioner.

Ms. Staffeldt filed a timely complaint for administrative review before this Court on March 28, 2003. The parties now have filed cross motions for summary judgment: Ms. Staffeldt seeks reversal or remand of the Commissioner's decision (doc. # 28), and the Commissioner seeks a judgment affirming the decision (doc. # 25). For the reasons set forth below, the Court denies the Commissioner's motion for summary judgment, and grants Ms. Staffeldt's motion to remand this case.

I.

The following facts are taken from the administrative record, the administrative hearing transcript, and the ALJ's written decision.

A.

Ms. Staffeldt is 48 years old and is divorced (R. 36, 143). She lives with her mother and father in their home (R. 35-36). Ms. Staffeldt completed high school (R. 36). Prior to filing for disability, Ms. Staffeldt worked as a clerk-cashier at a gas station from September 1991 to November 2000, a cashier at a grocery store from July 1991 to February 1992, and as a shipping and receiving clerk at a hardware store from 1985 to 1989 (R. 118). Ms. Staffeldt has not been employed since October 15, 2000, aside from briefly attempting to clean her brother's laundromat for four nights (R. 43, 109).

**B.**

At the administrative hearing, Ms. Staffeldt was not represented by legal counsel (R. 30). When the ALJ questioned her about whether she wished to proceed without representation, she expressed a belief that she could not afford legal counsel.

> ALJ: I notice you're here without at attorney or any other representative and I'm sure you're aware that you can be represented at these hearings if you want to be. . . .
>
> Staffeldt: If you've got money for it yeah.

(R. 30). The ALJ questioned whether Ms. Staffeldt had received information regarding her right to be represented; he described how having an attorney could be helpful, given an attorney's familiarity with Social Security rules and procedure and the ability to gather the information and records needed to support her claim (R. 30-31). The ALJ confirmed that Ms. Staffeldt had received a list of attorneys who might agree to represent her without cost (R. 31). The ALJ then explained that if Ms. Staffeldt could not find an attorney to represent her without cost from that list, then she should be able to find a private attorney who would represent her on a contingent fee basis (R. 31-32). The ALJ also noted that their fee would generally be 25 percent of past due benefits or $5,300, whichever was less (R. 32). The ALJ offered to give Ms. Staffeldt time to find legal counsel to represent her, but Ms. Staffeldt chose to continue with the hearing *pro se* (R. 33). The ALJ then informed her of her right to appeal and to have representation at each level (*Id.*).

After confirming Ms. Staffeldt's choice to continue unrepresented by counsel, the ALJ described the issues involved in the disability determination and the record. He noted that Ms. Staffeldt had arrived late, and because of that, she would not be given the opportunity to review the

exhibits before the hearing, but that she should review the file following the hearing for any missing records (R. 34-35).

## C.

After the colloquy concerning the right to counsel and the administrative record, the ALJ asked Ms. Staffeldt various questions about her health. Ms. Staffeldt testified that she began to experience severe pain from arthritis in 1994, approximately eight years prior to her hearing (R. 43-44). She awoke in the middle of the night with terrible pain and unable to move her right wrist (R. 43-44). She went to the emergency room on June 14, 1999, and was treated for bursitis and given anti-inflammation medicine (R. 44). Later, on August 24, 2000, she visited a rheumatologist who diagnosed her with rheumatoid arthritis (*Id.*). She stated that she takes multiple medications including Prednisone and Methotrexate to help control her conditions (R. 46-48). Specifically, the takes Prednisone, alternating between 5 milligrams and 7.5 milligrams daily, to help control her pain (R. 46, 48). She also takes Methotrexate 7.5 milligrams per week (R. 48). Ms. Staffeldt testified that she sees her primary care physician, Dr. Baubly, every three months for arthritis, but also sees him for visits in addition to those regularly scheduled for arthritis care (R. 55).

Ms. Staffeldt testified that her pain affects her in different places at different times ("it goes wherever it wants to go") (R. 45). It has been in her ankles and severe enough to require crutches, as well as in her jaw, preventing her from eating (*Id.*). At the time of the hearing, she experienced the pain mostly in her wrists and knuckles, and her left ankle (*Id.*). Her jaw pain occurs periodically, "every couple of months" (R. 46). She has trouble sleeping from the medications and the pain (R. 46-47). Ms. Staffeldt testified that she experiences pain every day that she rates at three on a ten point scale, where one is not very much and ten is excessive pain requiring an emergency room visit

(R. 47). She notes that her pain increases as soon as she is active, and that she has reached pain of level 10, having visited the emergency room several times (R. 47-48). Ms. Staffeldt described her pain as aching and throbbing, and increasing following any kind of activity (R. 49-50). After taking a walk, Ms. Staffeldt's pain remains at an elevated level until after a couple of hours of rest (R. 50). She had not used crutches for a couple years prior to the hearing (*Id.*). While one record indicated Ms. Staffeldt may have carpal tunnel in her right wrist, she did not have follow-up tests, and it seemed to have stopped bothering her (R. 51). She estimates that her condition is approximately the same as it was one and two years previous (R. 50-51).

Ms. Staffeldt also has a history of depression. On June 26, 1998, she was admitted at Elmhurst Memorial Hospital in Elmhurst, Illinois, as suicidal. She was discharged on July 1, 1998, to live with her parents. She was advised to receive counseling at the DuPage County Mental Health Center. She was also given a prescription for 20 mg. of Prozac. In addition to the other medications she has been prescribed, she takes Lorazepam (R. 54). After her hospital visit in 1998, Ms. Staffeldt received treatment for approximately one year from DuPage County Health Department (R. 53). Ms. Staffeldt testified that she was not then receiving any mental health treatment other than by using Prozac (R. 53). She also testified that her depression seemed controlled (*Id.*). However, Ms. Staffeldt said that she still experiences limitations from her depression, in that she "wake[s] up some days" and does not "want to wake up some days" (*Id.*). Ms. Staffeldt also testified that her memory is getting worse (*Id.*).

## D.

The ALJ received testimony from an ME, who reviewed Ms. Staffeldt's file and was able to ask her questions about her conditions, in addition to those previously asked by the ALJ himself.

The ME began by questioning Ms. Staffeldt about additional medications that she had previously used. She had been on Naprosyn, but stopped after it caused her to be sick to her stomach (R. 64). She also tried Celebrex and other similar arthritis medications (*Id.*). Ms. Staffeldt has not seen a rheumatologist since the one that diagnosed her with rheumatoid arthritis (*Id.*). After the ME's initial questions to Ms. Staffeldt, the ALJ questioned the ME.

Responding to a question from the ALJ, the ME testified that the medical records were adequate in order to render an opinion on Ms. Staffeldt's disability assessment (R. 65). The ME testified that Ms. Staffeldt has physical and mental impairments, namely rheumatoid arthritis and bi-polar depression. He noted that she had a history of being suicidal, for which she had received hospitalization in 1998 (R. 66). The ME also noted that she had experienced other acute episodes that had been treated, and that her carpal tunnel had never been substantiated, though she may have had it for a time (*Id.*).

The ALJ asked the ME if Ms. Staffeldt had any impairment that met or equaled a listing, to which the ME responded, "no" (R. 66). The ME provided no explanation for that conclusion: he did not cite any listings he had considered, or what specific medical evidence led him to his conclusion. The ALJ then testified about Ms. Staffeldt's functional limitations, largely adopting the state consultative report on her physical RFC (R. 67). However, the ME testified that he was "not really competent to talk about the functional capacity on the affective disorder problem that she has," which the ME said "I think she probably still has but I didn't know that much about it." (*Id.*)

The ME testified that Ms. Staffeldt's description of pain as "mov[ing] around" was a reasonable one, given her condition (R. 67). He noted that her doses of both Methotrexate and Prednisone were on the low end of the dosing scale (R. 68). He expressed interest in seeing updated

test results for her SED rate, which had been at "36" in 1999 (R. 68). The ME said the test was not "terribly important," though "if [the SED rate] had come down, it would have indicated something had happened" (R. 68-69).[2] The ME expressed some surprise at the infrequency of certain blood tests, however, after questioning, Ms. Staffeldt explained that she did not have medical insurance and had to pay for tests herself, which the ALJ accepted as the probable reason for the lack of tests (R. 69). The ALJ asked that if any more blood tests were completed, to send the results to him for review (R. 71).

Finally, the ALJ closed the hearing by noting he would try and issue a decision as quickly as possible, and hopefully within 60 days (*Id.*). The ALJ asked Ms. Staffeldt to get a SED rate test as well (R. 72), which she had done on June 21, 2002, the results of which became part of the record on July 19, 2002 (R. 325-326, 73). The tests showed the SED rate to be "8;" the word "great" was written next to those results (R. 326).

### E.

In a written decision dated June 5, 2002, the ALJ concluded that Ms. Staffeldt is not disabled, nor has she been disabled at any time since her alleged disability onset date of October 15, 2000 (R. 20). The ALJ based his conclusion on findings that while Ms. Staffeldt's rheumatoid arthritis and depression were severe impairments, they did not meet or equal any listed impairment (R. 21). In reaching that conclusion, the ALJ cited – without discussion – the state consultative reports of Ms. Staffeldt's mental and physical conditions (R. 283-304). The ALJ further found that while Ms. Staffeldt could not perform her past relevant work given her severe impairment, she did have the

---

[2]The ME later explained that the SED rating "tends to go up with active inflammation and come down if the inflammation is controlled" (R. 72).

7

residual functional capacity to perform unskilled, light work that exists in significant numbers in the national economy (R. 19-20). The ALJ found Ms. Staffeldt's testimony about limitations stemming from pain to be "not fully supportive of a residual functional capacity that . . . for unskilled light work" (R. 19). In support of that conclusion, the ALJ cited Ms. Staffeldt's testimony that her underlying pain level was three on a scale of ten, without citing her corresponding testimony that her pain increases with activity (*compare* R. 19 *and* R. 47-48). The ALJ also stated that the ME had testified that her pain level "should not cause limits beyond those to which he considered in opining about her [RFC]" (R. 19-20). However, we found no testimony by the ME specifically addressing the effect of Ms. Staffeldt's pain on her RFC.

After the ALJ's decision on October 29, 2002, Ms. Staffeldt's treater opined that Ms. Staffeldt "will not be able to work for at least one year until better control is obtained for her rheumatoid arthritis" (R. 335).

## II.

We begin our analysis with a brief overview of the relevant legal standards. To establish a "disability" under the Act, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A)(2004). A claimant must demonstrate that his impairments prevent him from performing not only his past work, but also any other work that exists in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A). The social security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520 (2004). Under this rule, the ALJ must consider: (1) whether the

claimant is presently unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) whether the claimant is unable to perform his past relevant work; and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *see also Young v. Sec'y of Health and Human Services*, 957 F.2d 386, 389 (7th Cir. 1992).

A finding of disability requires an affirmative answer at either Step 3 or 5. A negative answer at any step other than Step 3 precludes a finding of disability. *Id.* The claimant bears the burden of proof at Steps 1 through 4, after which the burden of proof shifts to the Commissioner at Step 5. *Id.*

In reviewing the Commissioner's (here the ALJ's) decision, this Court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The Court must accept the findings of fact which are supported by "substantial evidence," 42 U.S.C. § 405(g) (2004), which is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Herron*, 19 F.3d at 333 (quotations omitted). Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner (or the ALJ), not the courts. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). *See also Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989) (the ALJ has the authority to assess medical evidence and give greater weight to that which the ALJ finds more credible). The Court is limited to determining whether the Commissioner's final decision is supported by substantial evidence and based upon proper legal criteria. *Ehrhart v. Sec'y of Health and Human Services*, 969 F.2d 534, 538

(7th Cir. 1992). A finding may be supported by substantial evidence even if a reviewing court might have reached a different conclusion. *See Delgado v. Bowen*, 782 F.2d 79, 83 (7th Cir. 1986) (per curiam).

That said, the Commissioner (or ALJ) is not entitled to unlimited judicial deference. The ALJ must consider all relevant evidence, and may not select and discuss only that evidence which favors his or her ultimate conclusion. *See Herron*, 19 F.3d at 333. Although the ALJ need not evaluate in writing every piece of evidence in the record, the ALJ's analysis must be articulated at some minimal level and must state the reasons for accepting or rejecting "entire lines of evidence." *Id. See also Young*, 957 F.2d at 393 (ALJ must articulate reason for rejecting evidence "within reasonable limits" if there is to be meaningful appellate review). The written decision must provide a "logical bridge from the evidence to [the] conclusion" that allows the reviewing court a "glimpse into the reasoning behind [the] decision to deny benefits." *See, e.g., Zurawski v. Halter*, 245 F.3d 881, 887, 889 (7th Cir. 2001) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). This is especially true regarding credibility determinations, since both the case law and the regulations require an ALJ to minimally articulate the specific reasons for the credibility finding. *Zurawski*, 245 F.3d at 887. Specific reasons are required so that the reviewing Court can ultimately assess whether the ALJ's determination was supported by substantial evidence or, if not, was "patently wrong." *Id.* (quoting *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000)).

Ms. Staffeldt challenges the ALJ's decision on four grounds. She claims that: (1) the Step 3 determination was patently wrong; (2) the Step 4 determination was patently wrong; (3) the ALJ's credibility determinations were patently wrong; and (4) the ALJ failed to fully and fairly develop the record. We focus our analysis below on this fourth challenge, which we find requires a remand.

## III.

As we explained above, a claimant bears the burden of proof at Steps 3 and 4. *See Young*, 957 F.2d at 389. That burden, of course, would generally require a claimant to offer evidence that would warrant findings in her favor at those steps. However, when a claimant proceeds *pro se*, an ALJ has an independent duty to fully and fairly develop the record, even if the claimant has validly waived the right to counsel. *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994).[3] The ALJ's duty to develop the record requires that he "scrupulously and conscientiously [] probe into, inquire of and explore for all of the relevant facts" in her case. *Binion*, 13 F.3d at 245 (internal quotation mark omitted). This duty requires an ALJ to obtain relevant medical evidence, as well as to ask relevant questions at the hearing in order to probe into all relevant areas. *Id.*

We note that this rule does not shift the burden of *persuasion* at Steps 3 and 4: it is still the burden of the claimant to show that the evidence warrants a finding in her behalf at Steps 3 and 4. Rather, what *Binion* makes clear is that when a claimant is unrepresented during the administrative proceeding, the ALJ may not simply sit back and rely upon the claimant to develop the factual record from which the Steps and 3 and 4 determinations are made. Rather, the ALJ must affirmatively take steps to fully develop the record. *See also Smith v. Apfel*, 231 F.3d 433 (7th Cir. 2000); *Harris v. Barnhart*, No. 03 C 3185, 2005 WL 1655202, * 12 (N.D. Ill. Apr. 26, 2005). Where, as here, the claimant validly waived counsel during the administrative hearing, it is the burden of the claimant to show inadequacies in the development of the record. *Binion*, 13 F.3d at 245. In this case, Ms.

---

[3]For a waiver of counsel to be valid, the ALJ must explain to the unrepresented claimant "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." *Binion*, 13 F.3d at 245. In this case, the ALJ did explain each of these items at the beginning of the hearing, but Ms. Staffeldt chose to continue with the hearing unrepresented (R. 33). Ms. Staffeldt raises no issue concerning the validity of the waiver.

11

Staffeldt claims that the ALJ failed to fully develop the record in several regards (Pl.'s Mem. 21-23). For the following reasons, we agree that the ALJ failed to fully develop record of plaintiff's physical and mental conditions, which was necessary in reaching fully informed findings at Steps 3 and 4.

*First*, the written record of the agency's reports on Ms. Staffeldt's psychological and physical condition are not very illuminating (R. 283-304). Both of those reports consist principally of certain boxes being checked on preprinted forms. On each report, in the space provided for narrative comments very little is written, and what is written is largely eligible (*see* R. 295, 304). While these reports provide bottom-line assessments concerning the functional limitations resulting from Ms. Staffeldt's rheumatoid arthritis and depression, they do not explain the basis for those conclusions. Yet, in concluding that Ms. Staffeldt's condition failed to meet or equal a listing at Step 3, the ALJ cited to these reports and nothing else.

*Second*, while the ALJ obtained testimony from an ME, who theoretically could have provided some of that explanation missing from the reports, the ME who testified in fact did not do so. The ME testified to a bottom-line conclusion that Ms. Staffeldt does not have any impairment that meets or equals a listing (R. 66), but he provided no explanation for that conclusion. Thus, the ME's testimony in substance added nothing to what already was in the reports, which themselves provided no intelligible explanation for the conclusions reached. Indeed, the ME conceded that he was not competent to talk about the effects on Ms. Staffeldt's functional capacity that are the result of her depression (R. 67). Thus, he could not have elaborated on the consultative report concerning Ms. Staffeldt's depression even had he been asked to do so.

*Third*, the ME's testimony concerning Ms. Staffeldt's RFC addressed only limitations stemming from her physical condition. The ME acknowledged that he was not competent to address

any limitations stemming from Ms. Staffeldt's depression (R. 67) – which includes sleep disturbance (R. 286), which can have an effect on RFC. *Wragg v. Barnhart*, No. 04 CV 0158, 2005 WL 1113913 (S.D. Ind., May 6, 2005). We find no evidence of record on this point.

*Fourth*, we note that in order to develop a sufficient record, an ALJ is permitted to contact a treating physician in order to obtain more information. 20 C.F.R. § 404.1512(e). The ALJ did not do so here. And, while the ALJ did inform Ms. Staffeldt that she should review the record after the hearing and if "you think there's something missing you can let us know and we can try and get it" (R. 35), we do not think that *Binion* contemplates that ALJs may delegate the responsibility for developing a full and complete record to the very people, unassisted by counsel, who well may lack the ability to do so. Moreover, asking the treating physician about Ms. Staffeldt's condition and her abilities in light of her conditions may have made a difference here. After the ALJ's decision, Ms. Staffeldt obtained a letter from her treating physician, Dr. Baubly, dated October 29, 2002, indicating that she would not be able to work "for at least one year until better control is obtained for her rheumatoid arthritis" (R. 335).[4]

We say "may" have made a difference because the opinion of a treating physician is entitled to controlling weight only if it is "well supported by medical findings and not inconsistent with other substantial evidence in the record." *Dickson v. Massanri*, 270 F.3d 1171, 1177 (7th Cir. 2001). And, Dr. Baubly's opinion was not any better explained than the state consultative reports on which the ALJ and ME relied. Nonetheless, this opinion is further information that might have prompted the ALJ to inquire further into all of the medical opinions and records, in order to develop a full and

---

[4]The ALJ suggests that we should disregard Dr. Baubly's opinion because it was not submitted until after the ALJ's determination (Def.'s Mem. at 14 n. 3). However, we consider Dr. Baubly's October 29, 2002 letter not in assessing the weight of the evidence, but in assessing whether the failure to obtain an updated opinion from the treating physician may have been a meaningful failure to develop the record.

13

complete record on which to make his determination. A remand here will afford the ALJ an opportunity to do so – now, with the aid of counsel who will now be representing Ms. Staffeldt.

IV.

As a result of the remand, we do not reach the other arguments plaintiff has raised in support of a reversal or remand. However, we make the following observations for the ALJ's use during the remand proceeding.

*First*, the duty of the ALJ to provide "a logical bridge from the evidence to [the] conclusion" that allows the reviewing court a "glimpse into the reasoning behind[] the decision," *Zurawski*, 245 F.3d at 889, is an affirmative one that exists irrespective of whether a claimant is represented by counsel. On remand, whatever his decision may be, the ALJ should take care to build that logical bridge. For example, we would have concern about another opinion that – as does this one – simply adopts an ME's conclusion (without explanation) that Ms. Staffeldt's rheumatoid arthritis and depression do not satisfy any listing. Likewise, if the ALJ wishes to accept the state agency reports concerning Ms. Staffeldt's mental and physical condition (R. 283-304), the ALJ should not only refer to that evidence, but explain why he finds it persuasive in light of all the other evidence in the record.

*Second*, in assessing Ms. Staffeldt's testimony concerning pain, the ALJ should consider not only her baseline level of pain, which she characterized as a "three" on a scale of one to ten (R. 47), but also her increased level of pain that she testified occurs with activity (R. 47). The ALJ's decision addressed the former point, but not the latter.

*Third*, the state agency's report of Ms. Staffeldt's mental condition identified sleep disturbance (R. 286). On remand, the ALJ should consider this factor, together with any other

underlying limitations imposed by Ms. Staffeldt's rheumatoid arthritis and depression, determining her RFC (if that determination proves necessary).

## CONCLUSION

We find that the failure to develop the record here requires a remand. However, we express no view as to what the ultimate outcome should be on remand. We leave it open for the ALJ, on remand, to take new evidence and reconsider all aspects of the case.

Accordingly, the Commissioner's motion for summary judgment (doc. # 25) is denied and Ms. Staffeldt's motion to remand (doc. # 28) is granted. This case is therefore remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with this Order.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: July 29, 2005

15